UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　　v.<br><br>JACOB ANTHONY LINCOLN,<br><br>　　Defendant. | Case No. 3:17-cr-00154-DCN<br><br>**ORDER** |

# I. INTRODUCTION

On August 8, 2018, the Court held a hearing to sentence Jacob Lincoln. As part of sentencing, Lincoln urged the Court to depart from the guidelines and grant a downward variance by not imposing the "computer enhancement" in calculating his offense level. The Court heard oral argument from both parties on this issue.

At oral argument, counsel represented that the Judges in this District have taken slightly different approaches when it comes to addressing this enhancement. The Court took the matter under advisement as a way for the Court to engage in a thorough review of the subject and develop a policy moving forward. The Court asked the parties to submit supplemental briefing on the matter. They did, and after an extensive review, the Court issues the following decision—specific to this case—but also outlining its position on the enhancement for the benefit of counsel in future cases of this nature.

*In this case*, the Court *will not* apply the computer enhancement.

## II. BACKGROUND

On March 15, 2018, the United States charged Lincoln by Superseding Information with one count possession of Obscene Visual Representation in violation of 18 U.S.C. § 1466A(b)(1). On March 18, 2018, Lincoln pleaded guilty to the charge.

As is customary, a Pre-Sentence Report ("PSR") was prepared prior to sentencing. The PSR in this case outlined that Lincoln's base offense level was an eighteen. Four enhancements were then added to Lincoln's offense level based upon his specific conduct in this case— the "prepubescent minor" enhancement (2G2.2(b)(2)); the "sadistic or masochistic" enhancement (2G2.2(b)(4)); the "use of a computer" enhancement (2G2.2(b)(6)); and the "number of images enhancement (2G2.2(b)(7)).[1]

Specifically, at issue here, is the "use of a computer" enhancement. This enhancement imposes a two (2) level enhancement "if the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material." U.S.S.G. § 2G2.2(b)(6).

Broadly speaking, the argument against applying this enhancement is that the use of a computer is not truly an enhancement as it is present in virtually all cases today. While computer use may have been less common at the time Congress promulgated the

---

[1] Although Lincoln's brief addresses each of these four enhancements and alleges that each is omnipresent in virtually all child pornography cases and should not be applied, the Court's concern and focus—at least at present—is solely related to the computer enhancement. The Court expresses no opinion on the other three enhancements at this time.

enhancement, today, the use of computers has become so ubiquitous in this area that the original justifications for applying the enhancement are less compelling. An additional argument is that Congress, not the United States Sentencing Commission, promulgated the enhancement and it is not supported by any empirical research.

The arguments in favor of applying the enhancement generally sound in consistency and deference to the guidelines themselves—i.e. not straying from what is plainly written. In this District, it appears that the Judges have taken varied approaches to the issue.

### III. DISCUSSION

The use of a computer enhancement is controversial nationwide and various approaches have resulted in widespread disparity in sentences imposed in child pornography cases.[2] These disparities are the result of some judges refusing to apply the enhancement citing a lack of research and evidence or the idea that the enhancements are all but inherent in the crime, while other judges strictly follow the guidelines and apply the enhancements as written.

Specifically, the Ninth Circuit has held that "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them." *United States v. Henderson*, 649 F.3d 955, 963 (9th Cir. 2011). The Ninth Circuit based this

---

[2] *See, e.g.*, *United States v. Grober*, 624 F.3d 592, 603 (3d Cir. 2010) (collecting cases); *United States v. Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010); *United States v. Donaghy*, No. 09-CR-243, 2010 WL 2605375, at *2 (E.D. Wis. June 24, 2010) (collecting cases).

determination upon three United States Supreme Court cases: *Kimbrough v. United States*, 552 U.S. 85 (2007), *United States v. Booker*, 543 U.S. 220 (2005), and *Spears v. United States*, 555 U.S. 261 (2009), which—broadly speaking—held that Judges are free to depart from sentencing guidelines on policy grounds. *See Henderson*, 649 F.3d at 960 ("Like the crack-cocaine Guidelines at issue in *Kimbrough,* the child pornography Guidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role.' . . . So district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough*."). Because the child pornography guidelines do not reflect the Commission's unique institutional strengths, this Court will afford them less deference than it would empirically-grounded guidelines.

The purpose of sentencing enhancements is to distinguish between—and give weight to—the specific facts, conduct, and characteristics of individuals who commit similar crimes. A simple "charge offense" system—one that does not take into account relevant facts and conduct—would "not be a fair system, for it would lack proportionality, *i.e.,* it would treat different offenders similarly despite major differences in the manner in which each committed the same crime." *Apprendi v. New Jersey*, 530 U.S. 466, 556 (2000).

Allowing for personalized adjustments was one of the primary focuses of the Sentencing Reform Act of 1984. *See, e.g.*, *Booker*, 543 U.S. at 250 (explaining that Congress' statutory goal in enacting the SRA was to create uniformity in sentences, and

to "base punishment upon, the *real conduct* that underlies the crime of conviction") (emphasis in original).

Upon review, the undersigned is of the opinion that, in child pornography cases, increases in offense levels are relevant and proper when the crime is furthered, increased, or truly *enhanced* by that specific conduct. In other words, the Court finds it persuasive that in recent years, almost all child pornography cases involved the use of a computer. *See* United States Sentencing Commission, Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2012, at 41 (computer used in 96.4% of child-porn cases), available at http://www.ussc.gov/Data_and_Statistics/index.cfm (select "Guideline Application Frequencies"). Such a finding indicates that the conduct is not an enhancement, but is, in most cases, intertwined with the crime itself. The simple use of a computer in these circumstances would not—in the Court's estimation—be worthy of the computer enhancement. If, on the other hand, an individual was *specifically* using a computer to further his crime—such as disseminating self-produced content or using high-end computer software to encrypt, mask, steal, trade, sell, or barter child pornography[3]—the Court would be inclined to apply the enhancement.

## IV. CONCLUSION

In short, the Court will retain its discretion in applying this enhancement but will *generally* not apply it unless specific conduct warrants such action.

---

[3] These are but examples and not intended to be an exhaustive list.

ORDER - 5

After evaluating Lincoln's conduct in this case, the Court *will not* apply the two-level enhancement under U.S.S.G. § 2G2.2(b)(6) for the use of a computer.[4]

DATED: October 11, 2018

David C. Nye
U.S. District Court Judge

---

[4] As noted in footnote 1, however, the Court will apply the other enhancements as calculated in this case.